1  KEVIN V. RYAN, CA No. 118321
   United States Attorney
2  JOANN M. SWANSON CA No. 88143
   Chief, Civil Division
3  PATRICIA BENTON, CA No. 75587
   Special Assistant U.S. Attorney
4
       450 Golden Gate Avenue, Box 36055
5      San Francisco, CA 94102
       Telephone: (415) 436-6909
6      Facsimile: (415) 436-6927
       patricia.benton@usdoj.gov
7
8  Attorneys for Plaintiff

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12                 C  0 4     4  0  8  1

13  UNITED STATES OF AMERICA          )
                                      )
14                   Plaintiff,       )    Case No. C
          v.                          )
15                                    )    COMPLAINT FOR RECEIVERSHIP
    PROSPERO VENTURES, L.P.,          )    AND PERMANENT INJUNCTIVE
16                                    )    RELIEF
                     Defendant.       )
17                                    )
                                      )
18  _____

19      COMES NOW Plaintiff, United States of America, on behalf of its agency, the Small

20  Business Administration, and for its cause of action states as follows:

21              PARTIES, JURISDICTION AND VENUE

22      1.  This is a civil action brought by the United States of America on behalf of its

23  agency, the Small Business Administration (hereinafter, "SBA"), whose central office is located

24  at 409 Third Street, S.W., Washington, D.C., 20416.  The Defendant has stipulated and

    consented to the requested relief in this civil action.
25
        2.  Jurisdiction is conferred on this Court by virtue of the Small Business Investment Act of
26
    1958, as amended (hereinafter. the "Act"), Sections 308(d), 311 and 316, 15 U.S.C. § § 687(d),
27
    687c and 687h; and 28 U.S.C. § 1345.
28

C 04 -
Complaint For Receivership/Injunctive Relief                                          1

1    3. Defendant, Prospero Ventures, L.P., (hereinafter, "Prospero") is a California limited

2    partnership.

3    4. Defendant, Prospero, maintains its principal office and/or principal place of business at

4    870 Market Street, Suite 1040, San Francisco, California 94102. Venue is therefore proper under

5    15 U.S.C. §§ 687(d), 687h and 28 U.S.C. § 1391(b).

6                                      **STATEMENT OF FACTS**

7    5. Prospero (formerly known as Dotcom Ventures, L.P.) was licensed by SBA as a small

8    business investment company ("SBIC" or "Licensee") on September 29, 1999, SBA License No.

9    09/79-0422, under Section 301(c) of the Act, 15 U.S.C. § 681(c), solely to do business under the

10   regulations promulgated thereunder.

11   6. According to the most recent filings with SBA made by Prospero pursuant to its

12   obligation under applicable regulations to report financial and management information to SBA,

13   the management of Prospero consists of Prospero Investments, L.L.C., the sole general partner of

14   Prospero, and Prospero Management Inc., the management company of Prospero, who together

15   are responsible for the day to day functions and operations of Prospero.

16   7. SBICs are intended to advance the interests of small businesses by providing financial

17   assistance to small concerns. 15 U.S.C. § 661.

18   8. The Amended and Restated Agreement of Limited Partnership of Prospero submitted to

19   SBA expressly provides that Prospero was organized solely for the purpose of operating under

20   the Act and subject to regulations issued by SBA thereunder.

21   9. Section 308(c) of the Act, 15 U.S.C. § 687(c), empowers SBA to prescribe regulations to

22   carry out the provisions of the Act and to govern the operations of SBICs. SBA has duly

23   promulgated such regulations, which are codified at Title 13 of the Code of Federal Regulations,

24   Part 107 (the "Regulations").

25   10. Section 308(d) of the Act, 15 U.S.C. § 687(d), provides that upon determination and

26   adjudication of noncompliance or violation of the Act or the Regulations, all of the rights,

27   privileges and franchises of a Licensee may be forfeited and the company may be declared

28   dissolved.

C 04 -
Complaint For Receivership/Injunctive Relief                                              2

1    11. Section 311 of the Act, 15 U.S.C. § 687c, provides that, whenever in the judgment of

2  SBA, a Licensee, or any other person, has engaged in or is about to engage in any acts or

3  practices which constitute or will constitute a violation of the Act or of any Rule or Regulation

4  promulgated pursuant to the Act, or of any order issued under the Act, then SBA may make

5  application for an injunction, and such Court shall have jurisdiction of such action and shall grant

6  permanent or temporary injunction, or other relief without bond, upon a showing that such

7  Licensee has engaged in or is about to engage in any such acts or practices.  The Court may also

8  appoint SBA to act as receiver for such Licensee.

9    12. In accordance with Section 303 of the Act, 15 U.S.C. §683b, SBA provided financing to

10  Prospero through the purchase of the following participating securities totaling $8,984,885:

| Loan No. | S Principal | Issue Date |
|----------|-------------|------------|
| 02030251-06 | 1,829,885 | 2000 |
| 02030252-04 | 800,000 | 2000 |
| 02030253-02 | 2,000,000 | 2000 |
| 02030254-00 | 750,000 | 2000 |
| 02030255-09 | 220,000 | 2000 |
| 02030256-07 | 260,000 | 2000 |
| 02030257-05 | 220,000 | 2000 |
| 02030258-03 | 330,000 | 2000 |
| 02030259-01 | 515,000 | 2000 |
| 02030260-04 | 950,000 | 2000 |
| 02030261-02 | 545,000 | 2000 |
| 02030262-00 | 170,000 | 2001 |
| 02030263-09 | 150,000 | 2001 |
| 02030264-07 | 35,000 | 2001 |
| 02030265-05 | 210,000 | 2001 |

27  (hereinafter referred to collectively as the "Participating Securities").

28

C 04 -
Complaint For Receivership/Injunctive Relief                                    3

1    13. The Participating Securities are expressly subject to and incorporated by reference in the

2 Regulations, including but not limited to the provisions of 13 C.F.R. § 107.1820 through 1850

3 (1998-2004 Editions).

4    14. SBA determined that Prospero had a condition of capital impairment.

5    15. By letter dated August 15, 2001 (the "Notice of Violation"), SBA directed Prospero to

6 cure its condition of capital impairment within 15 days or be placed in restricted operations.

7    16. Prospero failed to cure its condition of capital impairment and by letter dated January 23,

8 2003, SBA informed Prospero that it was placing Prospero in restricted operations as Prospero

9 had failed to cure its capital impairment within the time frame set forth above. To date, Prospero

10 has failed to cure its capital impairment.

11                                 **COUNT ONE**

12          **Capital Impairment and Non Performance of the Requirements of a**
                            **Participating Security**

13

14    17. Paragraphs 1 through 16 are incorporated by reference as though set forth in their entirety

herein.

15    18. Section 107.1830(b) of the Regulations provides that if there is a condition of Capital

16 Impairment, there is no compliance with the terms of the licensee's leverage.  13 C.F.R. §

17 107.1830 (2001).

18    19. Section 107.507(a) of the Regulations provides that nonperformance of any of the

19 requirements of any Participating Security shall constitute a violation of the Regulations. 13

20 C.F.R. § 107.507 (2001).

21    20. Prospero's violation of the Regulations for capital impairment and nonperformance of the

22 requirements of a Participating Security entitles SBA to relief pursuant to 15 U.S.C. § 687c,

23 including injunctive relief and appointment of SBA as Receiver of Prospero.

24    21. To date, Prospero has failed to cure its impairment. As of September 30, 2003, Prospero

25 valued its portfolio assets at $151,644.

26    22. Prospero was notified on January 30, 2003 that it had been transferred to liquidation

27 status.

28

C 04 -
Complaint For Receivership/Injunctive Relief                                4

1    23. SBA provided financing to Prospero in the principal amount of $8,984,885.

2    **WHEREFORE,** Plaintiff prays as follows:

3    A.  That injunctive relief, both preliminary and permanent in nature, be granted restraining

4    Prospero, its officers, agents, employees and other persons acting in concert or participation

5    therewith from: (1) making any disbursements of Prospero's funds; (2) using, investing,

6    conveying, disposing, executing or encumbering in any fashion any or all funds or assets of

7    Prospero, wherever located; or (3) violating the Act or the Regulations promulgated thereunder.

8    B.  That this Court determine and adjudicate Prospero's noncompliance with the

9    requirements of the Participating Security and noncompliance and violation of the Act and the

10   Regulations promulgated thereunder.

11   C.  That this Court take exclusive jurisdiction of Prospero, and all of its assets, wherever

12   located, appoint SBA as permanent receiver of Prospero for the purpose of liquidating all of

13   Prospero's assets and satisfying the claims of creditors therefrom in the order of priority as

14   determined by this Court, and pursuing causes of action available to Prospero, as appropriate and

15   subject to all the provisions of that certain settlement agreement by and between Prospero, its

16   general partner and related management company, dated as of August 8, 2004, as approved by

17   SBA, a copy of which is attached hereto as Exhibit A.

18   D.  That this Court order that Prospero's license to operate as an SBIC shall be revoked upon

19   the wind-up and conclusion of the receivership thereof.

20   E.  That this Court grant such other and further relief as may be deemed just and equitable.

21

22                                        Respectfully submitted

23                                        KEVIN V. RYAN
                                          United States Attorney
24

25   Date: *October 14, 2004*      By:    *Patricia Benton*
                                          PATRICIA BENTON
26                                        Special Assistant U.S. Attorney

27

28

C 04 -
Complaint For Receivership/Injunctive Relief                                    5

# EXHIBIT A

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is made and entered into effective this 8th day of August, 2004 (the "Effective Date"), by and among Prospero Ventures, L.P., a California limited partnership (the "Partnership"), Prospero Investments, LLC, a California limited liability company (the "General Partner"), Prospero Management, Inc., a California corporation (the "Management Company"), Stephen Hyndman ("Hyndman"), and Sada Chidambaram ("Chidambaram"). The Partnership, the General Partner, the Management Company, Hyndman and Chidambaram, (each as defined above) will sometimes be referred to individually as a "Party" and collectively as the "Parties". The United States Small Business Administration ("SBA") shall not be referred to as a Party, except as otherwise expressly indicated.

## RECITALS

WHEREAS, the Partnership is licensed by SBA as a small business investment company (an "SBIC") pursuant to the Small Business Investment Act of 1958, as amended (the "SBIC Act") and the rules and regulations promulgated thereunder by SBA (the "SBIC Regulations").

WHEREAS, the General Partner is the general partner of the Partnership pursuant to the Partnership's Amended and Restated Limited Partnership Agreement, dated September 10, 1999, as amended from time to time thereafter (the "Partnership Agreement");

WHEREAS, the General Partner and the Partnership have engaged the Management Company to provide certain management services to the Partnership pursuant to the terms of that certain Amended and Restated Management Services Agreement, dated April 1, 1999, as amended from time to time thereafter (the "Management Agreement");

WHEREAS, Hyndman and Chidambaram are (i) the Managing Members (as defined in the Operating Agreement) of the General Partner pursuant to the General Partner's Amended and Restated Operating Agreement, dated April 1, 1999, as amended from time to time thereafter (the "Operating Agreement"), (ii) Key Officers (as defined in the Management Agreement) of the Management Company, and (iii) limited partners of the Partnership;

WHEREAS, SBA is a Preferred Limited Partner (as defined in the Partnership Agreement) of the Partnership;

WHEREAS, the Parties are in agreement that the Partnership owes the Management Company $52,532 in unpaid management fees accrued pursuant to the terms of the Partnership Agreement and Management Agreement, as modified by terms and conditions imposed by SBA in connection with the Partnership's condition of Capital Impairment and subsequent transfer to a status of Restricted Operations (as those terms are defined in the SBIC Regulations) (the "Undisputed Management Fee");

WHEREAS, the Partnership's books reflect management fees payable to the Management Company, in addition to the Undisputed Management Fee, in an amount equal to $789,207, for

periods prior to January 23, 2003, a payable with which SBA does not concur (the "Disputed Management Fee");

WHEREAS, pursuant to the General Partner's capital commitment obligation in Section 5.6 of the Partnership Agreement, the General Partner issued two promissory notes to the Partnership with an aggregate principal amount of $75,757.57 (the "Partner Capital Notes"), and the General Partner has an unfunded capital commitment of $75,757.58 (the "Unfunded Commitment," and together with the Partner Capital Notes, the "General Partner Capital Commitment");

WHEREAS, the General Partner made distributions of cash or marketable securities to the Partners (as defined in the Partnership Agreement) as set forth on EXHIBIT A attached hereto and as described in the memorandum attached hereto as EXHIBIT A-1 (the "Distributions");

WHEREAS, in connection with the distribution of 92,626 shares of Common Stock of Salon Media Group, Inc. (the "Salon Shares") to the General Partner on January 28, 2000, the General Partner issued a non-recourse promissory note, dated January 28, 2000, in the aggregate principal amount of $299,998.83 to the Partnership (the "Cost Basis Note"), and the General Partner and the Partnership entered into that certain Security Agreement, dated January 28, 2000 (the "Security Agreement"), setting forth the terms and conditions of the non-recourse Cost Basis Note;

WHEREAS, pursuant to the terms of the Security Agreement, the General Partner paid to the Partnership in cash the amount of $30,819.98 in partial repayment of the Cost Basis Note, bringing the principal balance of the Cost Basis Note to an adjusted amount of $269,178.85 ("Adjusted Cost Basis Note");

WHEREAS, the General Partner continues to hold all of the Salon Shares;

WHEREAS, Hyndman has an unfunded capital commitment obligation to the Partnership in the amount of $23,391 ("Hyndman's Unfunded Commitment");

WHEREAS, Chidambaram has an unfunded capital commitment obligation to the Partnership in the amount of $35,866 ("Chidambaram's Unfunded Commitment");

WHEREAS, the Partnership advanced an aggregate of $29,977 in expenses to the General Partner, and the General Partner owes such amount to the Partnership (the "General Partner Expenses");

WHEREAS, the Management Company paid $9,799 in expenses of the Partnership, and the Partnership owes such amount to the Management Company (the "Partnership Expenses");

WHEREAS, the Partnership recently received $34,154 in cash in connection with the liquidation of portfolio company assets (the "Portfolio Liquidation Assets");

WHEREAS, SBA placed the Partnership in Restricted Operations on January 23, 2003 after the Partnership failed to cure its condition of Capital Impairment;

WHEREAS, SBA has the authority under the SBIC Act and the SBIC Regulations to cause a licensee in Restricted Operations to call from its partners all unfunded capital commitments;

WHEREAS, the SBIC Act and the SBIC Regulations provide that SBA may be entitled, under certain circumstances, to relief relating to a licensee's condition of Capital Impairment, including injunctive relief and the appointment of SBA as a Receiver;

WHEREAS, the General Partner (on its own behalf and on behalf of the Partnership) desires, on the terms and conditions set forth herein, to consent to the appointment of SBA as receiver of the Partnership (the "Receiver") for the purpose of marshalling and liquidating in an orderly manner all of the Partnership's assets and satisfying the claims of creditors and partners therefrom and thereafter dissolving the Partnership; and

WHEREAS, the Parties believe it is in the best interests of the Partnership to consent to the receivership described herein.

### TERMS

NOW, THEREFORE, IN CONSIDERATION of the promises and mutual covenants and agreements herein contained, the receipt and sufficiency of which hereby are expressly acknowledged, the Parties hereto covenant, agree and consent as follows:

1.     **Agreement Regarding Consideration.** Except as expressly set forth herein, in anticipation of the Partnership's consent to the appointment of the Receiver and in reliance on execution and delivery of the Consent and Acknowledgement attached hereto by SBA, the Parties agree to compromise and settle all matters related to the Undisputed Management Fee, the Disputed Management Fee, the General Partner Capital Commitment, the Adjusted Cost Basis Note, Hyndman's Unfunded Commitment, Chidambaram's Unfunded Commitment, the General Partner Expenses, the Partnership Expenses, and the Portfolio Liquidation Assets (together, the "Claims") as set forth below in a cashless exchange involving the cancellation and waiver of certain rights and interests of the respective Parties:

(a)     **Management Fees.** Except as set forth in paragraph 1(g), the General Partner and the Management Company agree to forego any right, claim, title or interest in the Undisputed Management Fee and the Disputed Management Fee. The General Partner, Management Company, and Partnership agree that the Undisputed Management Fee and the Disputed Management Fee shall be waived and cancelled and otherwise eliminated as a liability on the books of the Partnership.

(b)     **General Partner Capital Commitment.** The Partnership agrees not to seek repayment of the Partner Capital Notes or to call the Unfunded Commitment, and the Partnership agrees that the Partner Capital Notes shall be cancelled by the Partnership and all obligations of payment of the Partner Capital Notes and the Unfunded Commitment by the General Partner (or any of its members or managers) thereunder shall be waived and otherwise eliminated as an asset of the Partnership.

(c)  **Cost Basis Note.**  As soon as practicable after the formal appointment of the Receiver, the General Partner agrees to transfer the Salon Shares to the Partnership and forego any right, title, claim or interest in the Salon Shares.  Except as otherwise set forth in the immediately preceding sentence, the Partnership agrees to (i) cancel and not seek repayment of the Adjusted Cost Basis Note, (ii) waive all obligations of payment of the Adjusted Cost Basis Note by the General Partner, and (iii) eliminate the Adjusted Cost Basis Note as an asset of the Partnership.

(d)  **Hyndman and Chidambaram Capital Commitment Obligation.**  The Partnership agrees to waive, cancel, and not seek collection of Hyndman's Unfunded Commitment or Chidambaram's Unfunded Commitment.

(e)  **General Partner Expenses.**  The Partnership agrees not to seek repayment of the General Partner Expenses and to forego any right, claim, title or interest in the General Partner Expenses.

(f)  **Partnership Expenses.**  The General Partner and Management Company agree to forego any right, claim, title or interest in the Partnership Expenses.

(g)  **Portfolio Liquidation Assets.**  Pursuant to the terms of the Partnership Agreement, the Partnership acknowledges and agrees that the General Partner was permitted, prior to the execution of this Agreement and the commencement of formal receivership proceedings as contemplated in paragraph 3 below, to cause the Partnership to distribute $29,705 of the Portfolio Liquidation Assets to the Management Company as partial payment of management fee payable by the Partnership to the Management Company.  The balance of Portfolio Liquidation Assets shall remain as assets of the Partnership.

(h)  **Distributions to Date.**  The Partnership agrees not to pursue any claim against any private partner of the Partnership, or any member, manager or equity holder thereof, regarding the Distributions, including without limitation any claim or right by the Partnership or the limited partners of the Partnership seeking the return of any portion of the Distributions to the Partnership (or any partner of the Partnership), pursuant to any provision of the Partnership Agreement.

2.  **Agreement Regarding Receivership.**

(a)  **Consent to Receivership.**  In consideration for SBA's consent to and acknowledgment of the terms and conditions of this Agreement as set forth on the attached Consent and Acknowledgement, the General Partner, on its own behalf and on the behalf of the Partnership, hereby agrees to consent to the appointment of SBA as Receiver.

(b)  **Dismissal of General Partner.**  The Parties acknowledge and agree that SBA will submit a proposed Order (as defined in paragraph 8 below) that provides that the Parties and SBA agree that the General Partner shall be dismissed as the general partner of the Partnership and relieved from its obligation to operate and manage the affairs of the Partnership and the Management Agreement shall be terminated.

4

(c)    **No Impact on Rights to Indemnity.** The Parties agree that the Management Company, the General Partner, and their members, managers, employees, and agents shall remain as parties eligible to seek indemnification from the Partnership, pursuant to the terms of the Partnership Agreement, Management Agreement, and the SBIC Regulations, for conduct prior to their relief from duties to the Partnership as contemplated by the immediately preceding sentence.

3.    **No Admissions.** It is understood and agreed that this is a compromise settlement of the Claims and certain related matters and that the promises, mutual covenants and agreements in consideration of this Agreement shall not be construed to be an admission of any liability or obligation whatsoever by any Party or signatory to any other Party, signatory or any other person (except for the obligations undertaken herein as part of this Agreement). This Agreement does not purport to carry the endorsement or consent of any particular limited partner of the Partnership (other than Hyndman, Chidambaram and SBA) nor to modify the duties, obligations, rights or remedies of any such limited partner.

4.    **Entire Agreement.** This Agreement contains the entire agreement between the Parties and all other signatories and constitutes the complete, final and exclusive embodiment of their agreement with respect to the subject matter hereof. The terms of this Agreement are contractual and not a mere recital of statement of intent. This Agreement is executed without reliance upon any promise, warranty or representation by any Party or any representative of any Party other than those expressly contained herein, and each Party has carefully read this Agreement, has been advised of its meaning and consequences by his or its respective attorney, and signs the same of his or its own free will.

5.    **Parties Bound and Benefited.** This Agreement shall bind the heirs, representatives, successors and assigns of each Party and each signatory, and inure to the benefit of each Party and each signatory, and each of its owners, shareholders, agents, directors, partners, managers, members, officers, employees, attorneys, successors and assigns. Otherwise there shall be no third party beneficiaries, except as expressly set forth in this Agreement.

6.    **Effectiveness of Agreement.** Without limiting the availability of any other remedy available at law or at equity, in the event that (i) the Court does not approve the Receiver's year end report covering the substance of the settlements, agreements and consents set forth in this Agreement, or (ii) SBA does not carry out its obligations under the Consent and Acknowledgement attached to this Agreement, then the General Partner, the Management Company, Chidambaram and Hyndman shall each have the right, for a period of thirty (30) days following notice of any such event to withdraw their consent and agreement as set forth in paragraphs 1(a)-(h). Notwithstanding the foregoing and for the avoidance of doubt, the consent to receivership described in paragraph 2(a) shall not be effected by any withdrawal of consent described in the immediately preceding sentence.

7.    **Cooperation.** As set forth in and as controlled by the Order (as defined in paragraph 8 below), the Parties acknowledge that Hyndman and Chidambaram agree to remain available to assist the Receiver, from time to time, and at reasonable times during ordinary business hours and upon reasonable notice, in transitioning the affairs of the Partnership to the Receiver. The General Partner agrees to turn over to the Receiver at a mutually agreeable time

and place located in the San Francisco Bay Area (i) all definitive agreements to which the Partnership is a party or is otherwise bound, including, the Partnership Agreement and any amendments thereto, (ii) a list of all limited partners including contact information, (iii) all records related to portfolio company investments, and (iv) the financial books and records of the Partnership, General Partner, and Management Company. The Parties agree that no written or oral communication delivered to SBA or the Receiver in connection with this Agreement is intended to effect a waiver of the attorney client privilege of the General Partner, the Management Company, or the Partnership.

8.    **Process.** The Parties understand and acknowledge that following the execution of this Agreement by each of them, SBA intends to file a Complaint in U.S. Federal District Court for the Northern District of California (the "Court") in a form substantially similar to Exhibit B attached hereto. Further, the Parties understand and acknowledge that SBA will proceed to file with the Court a Stipulated Settlement substantially in the form attached hereto as Exhibit C, and a draft Order substantially in the form attached hereto as Exhibit D formally creating the Receivership (the "Order"). The Parties understand that this Agreement will be attached to the Complaint as an exhibit thereto.

9.    **Governing Law.** This Agreement shall be deemed to have been entered into and shall be construed and enforced in accordance with the laws of the State of California as applied to contracts.

10.    **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have duly authorized and caused this Settlement Agreement to be executed as of the date set forth in the first paragraph hereof.

**PROSPERO VENTURES, L.P.**

By:    Prospero Investments, LLC
       as General Partner

By: _____

Name: SADA CHIDAMBARAM

Title: MANAGING MEMBER

**PROSPERO MANAGEMENT, INC.**

By: _____

Name: SADA CHIDAMBARAM

Title: C E O

**SADA CHIDAMBARAM**

By: _____

Name: SADA CHIDAMBARAM

Title: _____

**PROSPERO INVESTMENTS, LLC**

By: _____

Name: _____

Title: _____

**STEPHEN HYNDMAN**

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the Parties have duly authorized and caused this Settlement Agreement to be executed as of the date set forth in the first paragraph hereof.

PROSPERO VENTURES, L.P.

By:    Prospero Investments, LLC
       as General Partner

By: _____

Name: _____

Title: _____

PROSPERO MANAGEMENT, INC.

By: _____

Name: _____

Title: _____

SADA CHIDAMBARAM

By: _____

Name: _____

Title: _____

PROSPERO INVESTMENTS, LLC

By: _____

Name: _STEPHEN HYNDMAN_____

Title: _MANAGING MEMBER_____

STEPHEN HYNDMAN

By: _____

Name: _____

Title: _____

## SBA CONSENT AND ACKNOWLEDGEMENT

In consideration of the agreements, promises, consents and waivers of the Parties set forth in the Agreement to which this Consent and Acknowledgement is attached, the United States Small Business Administration agrees as follows:

1.    **Claims.** SBA consents and agrees to the compromise and settlement of the Claims, as described in paragraph 1 (a) through (h) of the Agreement.

2.    **Distributions.** SBA confirms its position that it has no claim, nor any intent to pursue any claim or to cause the Partnership to pursue any claim, against any private partner of the Partnership, or any member, manager or equity holder thereof, regarding the Distributions, including without limitation any claim or right by SBA, the Partnership, the limited partners of the Partnership seeking the return of any portion of the Distributions to the Partnership (or any partner of the Partnership), pursuant to any provision of the Partnership Agreement.

3.    **Affirmative Obligations.** SBA agrees to recommend to the Receiver that: (a) this Agreement constitutes a fair and equitable settlement of the Claims, and (b) request the Receiver to recommend to the Court in its first annual Receiver's report that it approve the terms of this Agreement and settlement of the Claims. SBA agrees not to take any action contrary to, or inconsistent with, its consent and agreement to the various matters set forth in this Agreement. For the avoidance of doubt, SBA enters into this Consent and Acknowledgement only in its capacity as preferred limited partner of the Partnership and as regulator of the Partnership under the SBIC program, and not in its capacity as, or on behalf of, the Receiver.

4.    **Acknowledgement Regarding Other Liabilities.** SBA acknowledges that the Partnership may have outstanding liabilities to Cooley Godward LLP and Pepper Hamilton LLP for legal services and PricewaterhouseCoopers for tax and accounting services provided to the Partnership prior to the commencement of any receivership, which liabilities are not affected by this Agreement.

5.    **No Release.** This Consent and Acknowledgement does not constitute a release of any nature of any claims of other than those relating to the Distributions as described in paragraph 2 of this Consent and Acknowledgement.

UNITED STATES SMALL BUSINESS
ADMINISTRATION

By: _Thomas M Morris_

Name: _Thomas G Morris_

Title: _Dir, office of Liquidation, SBA_

Date: _09 - 14 - 04_

466069 v13/HN
9ZMD13!.DOC

## EXHIBIT A

### DISTRIBUTIONS

| Cash Distributions from Partnership to Private Partners | | |
|---|---|---|
| *Date* | *Source* | *Distribution Amount* |
| 09/09/1999 | Internet Devices, Inc. | $1,455,329.32 |
| 12/23/1999 | Internet Devices, Inc. | $83,210.37 |
| 11/22/2000 | Internet Devices, Inc. | $318,288.00 |
| 11/22/2000 | SBA Leverage Redemption | ($170,115.00) |
| | Total: | $1,686,712.69 |

| In Kind Distributions from Partnership to Private Partners | | |
|---|---|---|
| *Date* | *Source* | *Distribution Amount* |
| 01/28/2000 | Salon.com stock | 445,283 shares * |
| | Total: | 445,283 shares |

\* The General Partner continues to hold 92,626 shares from this distribution.

**EXHIBIT A-1**
**MEMORANDUM DESCRIBING HISTORY OF DISTRIBUTIONS BY THE PARTNERSHIP**



**_Prospero_**
V E N T U R E S

Sada Chidambaram: 1700 Sand Hill Road, N°. 406, Palo Alto, CA 94304
tel 650-329-9209 cell 650-804-6224 <sadach@att.net>

Stephen Hyndman: 870 Market Street, Suite 1040, San Francisco, CA 94102
tel 415-398-0110 cell 415-305-2094 <s.hyndman@att.net>

## MEMORANDUM

May 14, 2004

To:    Mike Staebler, Esq.

Cc:    Sada Chidambaram
       John Dado, Esq.

From:  Steve Hyndman

Re:    _Distributions to Private Partners_

The following is a recap of the distributions made by Prospero Ventures, L.P. (the "Licensee"):

In September and December 1999, the Licensee distributed to its private partners cash in the aggregate amount of $1,538,540, following the sale of a pre-licensing investment in Internet Devices, Inc. These distributions occurred prior to the Licensee drawing any leverage, but was nonetheless reported to SBA and referenced in our letter to Roger Pederson dated September 24, 1999, and in the Operating Plan Update submitted to SBA in connection with the Form 468 for the reporting period ended December 31, 1999. The distributions were reported in the Licensee's financial statements for the period ended December 31, 1999, audited by PricewaterhouseCoopers and submitted to SBA. In addition, the distributions were included in the Schedule of Dispositions as part of the Examination Report for the 28-month period ended January 31, 2000, which was reviewed by the Office of SBIC Operations; in a letter from Walter Peterson dated March 29, 2000 SBA informed the Licensee that the examination disclosed no instances in which the Licensee failed to comply with the Small Business Investment Act or SBA's Rules and Regulations.

In January 2000, the Licensee distributed to its private partners 445,283 shares of common stock from its pre-licensing investment Salon.com, Inc., following the company's initial public offering. This distribution occurred prior to the Licensee drawing any leverage, but was nonetheless reported to SBA and referenced in our letter to Louis Darmstadter dated February 11, 2000. The distribution was included in the Schedule of Dispositions as part of the Examination Report for the 28-month period ended January 31, 2000, which was reviewed by the Office of SBIC Operations; in a letter from Walter Peterson dated March 29, 2000 SBA informed the Licensee that the examination disclosed no instances in which the Licensee failed to comply with the Small Business Investment Act or SBA's Rules and Regulations. The distribution was also reported to SBA in the Operating Plan Update submitted to SBA in connection with the Form 468 for the period ended December 31, 2000. In addition, the distribution was reported in the Licensee's financial statements for the period ended December 31, 2000, audited by PricewaterhouseCoopers and submitted to SBA.

The Licensee first drew leverage and issued Participating Securities to SBA in March 2000.

SH04028.DOC

2

In November 2000, the Licensee distributed cash in the amount of $318,288, upon receipt of additional proceeds from the sale of its pre-licensing investment in Internet Devices, Inc. Of this amount, $148,173 was distributed to the Licensee's private partners, and $170,115 was distributed to SBA as partial redemption of Participating Securities. These distributions were calculated and confirmed by SBA in the Participating Securities Distribution Worksheet attached to Cecilia Hoppenjans' email to the Licensee (with a copy to Louis Darmstadter) dated October 30, 2000, and re-confirmed in Ms. Hoppenjans' email to Mr. Darmstadter (with copies to Walter Peterson and Carol Fendler) dated November 14, 2000, and Mr. Darmstadter's email to the Licensee dated November 20, 2000. The distribution was also reported to SBA in the Operating Plan Update submitted to SBA in connection with the Form 468 for the period ended December 31, 2000. The distribution was reported in the Licensee's financial statements for the period ended December 31, 2000, audited by PricewaterhouseCoopers and submitted to SBA. In addition, the distribution was included in the Schedule of Dispositions and the Schedule of Distributions as part of the Examination Report for the 11-month period ended December 31, 2000, which was reviewed by the Office of SBIC Operations; in a letter from Walter Peterson dated June 6, 2001, SBA informed the Licensee that the examination disclosed no instances in which the Licensee failed to comply with the Small Business Investment Act or SBA's Rules and Regulations.

Copies of relevant documents are attached for your reference.

SH04028.DOC

PROSPERO VENTURES

**EXHIBIT B**
**FORM OF COMPLAINT**